**No. 25-20347**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ERICA MACK,
*Defendant-Appellant*.

On Appeal from the United States District Court
For the Southern District of Texas
Houston Division, Case No. 4:23-cr-397

# BRIEF OF PLAINTIFF-APPELLEE

JOHN G.E. MARCK
Acting United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

JENNIFER K. TEPER
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9000

ATTORNEYS FOR APPELLEE

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary. The record and briefs adequately present the facts and legal arguments, and oral argument would not significantly aid the decisional process. Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT .................................i

TABLE OF AUTHORITIES.................................................................iv

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES............................................................2

STATEMENT OF THE CASE ..............................................................3

I. Factual background...........................................................3

II. Procedural history..............................................................6

A. Superseding indictment and guilty plea. ......................6

B. PSR. ..................................................................................7

C. Sentencing. .......................................................................9

SUMMARY OF THE ARGUMENT .....................................................12

ARGUMENT .........................................................................................13

I. Mack's appellate waiver bars her Sentencing Guidelines challenge..........................................................................13

A. The standard of review is *de novo*. ..............................13

B. Mack's valid and enforceable appellate waiver bars the appeal of her sentence. ................................13

II. The district court properly denied Mack's request for a minimal participant adjustment under § 3B1.2..................17

**TABLE OF CONTENTS, cont'd**

**Page**

A. The standard of review is clear error. .......................... 17

B. Mack was an average participant in the drug conspiracy. .......................... 18

CONCLUSION .......................... 23

CERTIFICATE OF SERVICE .......................... 24

CERTIFICATE OF COMPLIANCE .......................... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*United States v. Alvarado-Casas*, 715 F.3d 945 (5th Cir. 2013) ............ 14

*United States v. Armendariz*, 323 F. App'x 336 (5th Cir. 2009) (unpublished)........................................................................ 16

*United States v. Ayala*, 47 F.3d 688 (5th Cir. 1995)............................... 19

*United States v. Bond*, 414 F.3d 542 (5th Cir. 2005)........................ 13, 16

*United States v. Clark*, 148 F.4th 785 (5th Cir. 2025)............................ 13

*United States v. Cuevas-Andrade*, 232 F.3d 440 (5th Cir. 2000) ........... 14

*United States v. Earnest*, 132 F.4th 905 (5th Cir. 2025) ........................ 17

*United States v. Elashyi*, 554 F.3d 480 (5th Cir. 2008) .......................... 13

*United States v. Guzman-Reyes*, 853 F.3d 260 (5th Cir. 2017) ............. 19

*United States v. Hawkins*, 866 F.3d 344 (5th Cir. 2017)........................ 17

*United States v. Jacobs*, 635 F.3d 778 (5th Cir. 2011) ........................... 13

*United States v. Long*, 722 F.3d 257 (5th Cir. 2013) .............................. 13

*United States v. Lott*, 53 F.4th 319 (5th Cir. 2022) ................................ 19

*United States v. McKinney*, 406 F.3d 744 (5th Cir. 2005) ................ 14, 16

*United States v. Meredith*, 52 F.4th 984 (5th Cir. 2022) ........................ 16

*United States v. Pena*, 91 F.4th 813 (5th Cir. 2024)............................... 17

*United States v. Portillo*, 18 F.3d 290 (5th Cir. 1994) ............................ 14

## TABLE OF AUTHORITIES, cont'd

**Cases** **Page(s)**

*United States v. Ramos-Delgado*, 763 F.3d 398 (5th Cir. 2014)............18

*United States v. Story*, 439 F.3d 226 (5th Cir. 2006)..............................13

*United States v. Torres-Hernandez*, 843 F.3d 203 (5th Cir. 2016).........19

*United States v. Villanueva*, 408 F.3d 193 (5th Cir. 2005).....................17

*United States v. Wiggins*, 784 F. App'x 134 (4th Cir. 2019) (unpublished)..................................................................................16

*United States v. Williams*, 610 F.3d 271 (5th Cir. 2010).......................18

**Statutes and Rules**

18 U.S.C. § 3231 ..........................................................................1

18 U.S.C. § 3742(a)........................................................................1

21 U.S.C. § 841(a)(1)...................................................................6, 8

21 U.S.C. § 841(b)(1)(A)(viii) .........................................................8

21 U.S.C. § 841(b)(1)(C)...............................................................6, 8

21 U.S.C. § 846 ..............................................................................6

28 U.S.C. § 1291 ............................................................................1

Fed. R. App. P. 4(b)(1)(A)(i)..........................................................1

Fed. R. App. P. 4(b)(2) ....................................................................1

Fed. R. App. P. 34(a)(2)(C) .............................................................i

## TABLE OF AUTHORITIES, cont'd

**United States Sentencing Guidelines** **Page(s)**

U.S.S.G. § 2D1.1(a)(5) .......... *passim*

U.S.S.G. § 2D1.1(a)(5)(B) .......... 9

U.S.S.G. § 2D1.1(b)(17) .......... *passim*

U.S.S.G. § 2D1.1(c)(1) .......... 8

U.S.S.G. § 3B1.2 .......... *passim*

U.S.S.G. § 3B1.2(a) .......... 22

U.S.S.G. § 3B1.2 cmt. n.3(A) .......... 18

U.S.S.G. § 3B1.2 cmt. n.3(C) .......... 18

U.S.S.G. § 3B1.2 cmt. n.3(C)(i) .......... 18

U.S.S.G. § 3B1.2 cmt. n.3(C)(ii) .......... 18

U.S.S.G. § 3B1.2 cmt. n.3(C)(iii) .......... 18

U.S.S.G. § 3B1.2 cmt. n.3(C)(iv) .......... 18

U.S.S.G. § 3B1.2 cmt. n.3(C)(v) .......... 18

U.S.S.G. § 3B1.2 cmt. n.4 .......... 19

U.S.S.G. § 3E1.1(a) .......... 8

U.S.S.G. § 3E1.1(b) .......... 8

## STATEMENT OF JURISDICTION

This appeal arises from Erica Mack's criminal prosecution, for which the district court (Bennett, J.) had jurisdiction under 18 U.S.C. § 3231. The district court imposed an amended judgment of conviction and sentence on August 13, 2025, which the clerk entered on August 26, 2025 (the amendment addresses a clerical mistake in Mack's USM Number). ROA.137-42, 152-57, 378.[1] Despite an appellate waiver in her plea agreement, Mack timely filed a notice of appeal on August 18, 2025. *See* Fed. R. App. P. 4(b)(1)(A)(i), (b)(2). ROA.150-51. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[1] "ROA" refers to the record on appeal, and the page number corresponds to the number following 25-20347 in the bottom-right corner of the record-on-appeal pages. "PSR" refers to the Final Presentence Investigation Report, filed on June 9, 2025, and is cited by ROA page and PSR paragraph number (¶). ROA.264. "U.S.S.G." and "Sentencing Guidelines" refer to U.S. Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2024). ROA.279 (PSR ¶ 60).

## STATEMENT OF THE ISSUES

I. Whether this Court should dismiss Mack's appeal based on her valid and enforceable appellate waiver in her plea agreement.

II. Alternatively, whether the district court properly denied Mack's request for a minimal participant adjustment under U.S.S.G. §§ 3B1.2, 2D1.1(a)(5), and 2D1.1(b)(17).

## STATEMENT OF THE CASE

One of eleven defendants, Mack participated in a drug trafficking conspiracy that operated two pill-pressing labs in Houston. Mack ordered the necessary equipment and supplies for the labs, which produced hundreds of thousands of pressed methamphetamine and fentanyl pills.

Mack pleaded guilty to one count of conspiracy to traffic drugs. At sentencing, the district court denied her request for a minimal participant adjustment under U.S.S.G. § 3B1.2, and correspondingly, under §§ 2D1.1(a)(5) and 2D1.1(b)(17). The district court imposed a sentence of 108 months' imprisonment. On appeal, Mack challenges the denial of any mitigating role adjustments. In her written plea agreement, however, Mack waived her right to appeal the sentence.

### I. Factual background.[2]

Beginning in March 2023, Drug Enforcement Administration (DEA) agents intercepted phone calls and text messages over Pervis Henry, III's cellular telephone for a period of two months to gather information about his suspected drug trafficking operation. ROA.272-77

[2] The facts are taken from Mack's admitted factual basis as part of her guilty plea and from the adopted PSR. ROA.423–27; *see* ROA.264–93 (PSR ¶¶ 14–54).

(PSR ¶¶ 17-23, 26, 29-31, 33-35, 37-40, 43-46, 49-52). Agents intercepted dozens of phone calls between Henry and his coconspirators, including Mack, wherein they discussed the operation of their drug lab located on Airport Boulevard in Houston. ROA.272-77 (PSR ¶¶ 17-23, 26, 29-31, 33-35, 37-40, 43-46, 49-52). From this location, Henry and his coconspirators mass produced pressed methamphetamine and fentanyl pills. ROA.195-96, 276-77 (PSR ¶¶ 46-47).

To operate a drug lab capable of manufacturing hundreds of thousands of drug-laced pills, Henry relied on Mack to equip his lab with pill presses and binding agent necessary for mass production. ROA.195-96, 272, 277-78 (PSR ¶¶ 16-18, 54). Specifically, Mack placed 21 orders with LFA Machines using her email address to purchase pill pressing machines, binding agent, and stamps for the drug trafficking operation. ROA.195-96, 272, 277-78 (PSR ¶¶ 16-18, 54). For instance, on March 2, 2023, Henry and Mack discussed the order she placed for pallets of binding agent that would be delivered to her residence for subsequent delivery to the Airport Boulevard lab. ROA.272 (PSR ¶ 17).

On April 19, 2023, DEA agents searched Henry's Airport Boulevard drug lab pursuant to a federal search warrant. ROA.276 (PSR ¶ 46).

Agents recovered the following: four pill presses; materials to dye pills; 520 grams of methamphetamine in powder form; 627 grams of fentanyl in powder form; 2,369 pills containing fentanyl and weighing 1,051 grams; 126,523 pills containing methamphetamine weighing 139,748 grams; and 1,424 grams of crystal methamphetamine. ROA.276-77 (PSR ¶ 47). Agents also recovered a Glock .40 caliber handgun modified with a switch converting it to an automatic weapon and a FedArm 12-guage semi-automatic shotgun. ROA.277 (PSR ¶ 48).

After Henry's lab was dismantled, he called Mack and the two discussed setting up another pill pressing lab. ROA.272 (PSR ¶ 18). Mack ordered new supplies including "additional pill pressing machines, binding agents, and stamps so Henry [ ] could operate a new drug lab." ROA.272 (PSR ¶ 18). Following the raid on his lab, Henry continued to deliver drug-laced pills to his customers on April 22, April 23, April 28, and May 2, 2023. ROA.272, 277 (PSR ¶¶ 18, 49-52). On May 2, 2023, specifically, Mack and Henry texted about 2,000 methamphetamine-laced pills Henry had just delivered to one of his customers. ROA.272 (PSR ¶ 18).

## II. Procedural history.

### A. Superseding indictment and guilty plea.

A grand jury returned a ten-count superseding indictment against Mack and multiple codefendants. ROA.66-76, 321-31. As relevant here, Count 1S charged Mack and ten other codefendants with conspiracy to possess with the intent to distribute and to distribute methamphetamine and fentanyl from approximately February 2023 through September 2023, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(C). ROA.66-69, 321-24.

Mack pled guilty to Count 1S, pursuant to a plea agreement. ROA.137, 152, 409-37 (rearraignment transcript); *see* ROA.189-202 (plea agreement). In paragraph 5 of her signed plea agreement, Mack:

> knowingly and voluntarily waive[d] the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant d[id] not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.

ROA.191. During Mack's plea colloquy, the prosecutor summarized the terms of the plea agreement and specifically noted that the plea agreement "contains an appellate waiver." ROA.427. Mack affirmed that the summary of her plea agreement was correct, as did her attorney (who

also represents her on appeal). ROA.410, 427-28. Mack also assured the district court that she had reviewed the written plea agreement with her attorney, who had answered all of her questions. ROA.427.

After finding that Mack was fully competent and capable of entering a plea, the district court found Mack's guilty plea knowing and voluntary and accepted her plea.[3] ROA.433-34.

### B. PSR.

The probation officer prepared Mack's PSR using the 2024 Sentencing Guidelines. ROA.279 (PSR ¶ 60). The probation officer deemed Mack an "average participant" in the offense because she ordered the necessary items to manufacture drug-laced pills and ordered additional equipment and supplies to set up another lab after the Airport Boulevard lab was raided by the police. ROA.277-78 (PSR ¶ 54). The probation officer determined that without Mack's purchase of the "machines and ingredients, the pressing of pills would not have been possible." ROA.278 (PSR ¶ 54).

[3] Mack pleaded guilty to Count One of the superseding indictment, but the district court mistakenly found her guilty "as charged in Count 1 of the indictment." ROA.434. Neither party objected nor corrected the Court during the proceeding. ROA.434.

Mack's base offense level was calculated at 38—the maximum—under U.S.S.G. § 2D1.1(c)(1), because she was held accountable for: 1,798.8 grams of actual methamphetamine; 1,682 grams of fentanyl; and 41,692 grams of methamphetamine. ROA.279 (PSR ¶¶ 54, 61). This resulted in a total converted drug weight of 123,565 kilograms. ROA.279 (PSR ¶¶ 54, 61).

The probation officer assessed Mack's total offense level as 35, based on the following:

| **PSR ¶** | **Guideline** | **Description** | **Level** |
|---|---|---|---|
| ¶ 61 | § 2D1.1(a)(5) and (c)(1) | Base offense level for violation of § 841(a)(1), (b)(1)(A)(viii), and (b)(1)(C). Where held accountable for 123,565 of converted drug weight. | 38 |
| ¶ 68 | § 3E1.1(a) and (b) | Adjustment for acceptance of responsibility. | -3 |
| ¶ 69 | | Total offense level | 35 |

ROA.279–80 (PSR ¶¶ 61–69).

Relevant to this appeal, Mack filed objections to the PSR, specifically the lack of: (1) a four-level minimal participant adjustment under § 3B1.2; (2) a three-level or four-level reduction of the base offense

level pursuant to § 2D1.1(a)(5)(B);and (3) a further two-level reduction under § 2D1.1(b)(17). ROA.236-39, 242-43, 246; *see* ROA.350-56. Mack argued she had no significant decision-making authority in the offense and only purchased items at her boyfriend Henry's direction, but acknowledged and accepted her role in "helping to create such a dangerous drug." ROA.237, 278 (PSR ¶ 57). Probation maintained that Mack was an average participant in the drug trafficking operation. ROA.291-92 (PSR Addendum).

### C. Sentencing.

At sentencing, Mack renewed her objection to the denial of a minimal participant adjustment under U.S.S.G. § 3B1.2 and additional two-level reduction because Mack's conduct was motivated by "an intimate family relationship." ROA.163-64, 170; *see* U.S.S.G. § 2D1.1(b)(17). Defense counsel argued Mack's "name, her email, her bank account, her information was used" to place 21 orders to further the drug conspiracy, but suggested there was no way to know who actually placed those orders. ROA.165-66. The thrust of his argument for both minimal participant designation and the additional two-levels for an

intimate partner was based on Mack's "limited knowledge…of the scope of structure of Henry's drug operation." ROA.170.

The court, however, pointed to the plea agreement Mack knowingly signed which said "[s]pecifically, Defendant placed 21 orders," which prompted the district court's conclusion "that the defendant took at least 21 separate acts to place an order … [n]ot her email, not her name. It says Defendant did it." ROA.165-66. Defense counsel responded that the basis of his objection was an outgrowth of the ambiguity as to whether Mack placed the orders or it was her identification that was used. ROA.166-68. The Court overruled Mack's objection to the lack of a § 3B1.2 mitigating role reduction, which effectively overruled the requests for reductions pursuant to §§ 2D1.1(a)(5) and 2D1.1(b)(17) which require a § 3B1.2 reduction to apply. ROA.168, 170-71; *see* U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(b)(17).

The district court found Mack's Guidelines range was 168-to-210 months' imprisonment, based on a total offense level of 35 and a criminal history category of I, and later adopted the PSR. ROA.174-75, 182, 294, 298. The Court varied downward and imposed a 108-month prison

sentence and 3 years' supervised release. ROA.137-39, 152-54, 182-83, 294-300. This appeal followed.

## SUMMARY OF THE ARGUMENT

Mack's valid appellate waiver in her plea agreement bars her sentencing challenge and her appeal should be dismissed.

Nevertheless, the district court properly denied Mack's request for a four-level minimal participant adjustment under U.S.S.G. § 3B1.2. The undisputed evidence in the PSR and the factual basis demonstrate Mack placed more than twenty orders for necessary equipment and supplies to operate both of Henry's drug labs. Those orders included multiple pill presses, pill stamps, and hundreds of kilograms of binding agent used to press drug-laced pills. Because of Mack's purchases, the Airport Boulevard lab mass produced more than 120,000 drug-laced pills. It was only with Mack's help, moreover, that a second drug lab was operational less than two weeks after law enforcement raided the Airport Boulevard lab. Because Mack was properly deemed an average participant, she was ineligible for any additional reductions under U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(b)(17).

Accordingly, the district court did not commit any error, much less clear error.

# ARGUMENT

## I. Mack's appellate waiver bars her Sentencing Guidelines challenge.

### A. The standard of review is *de novo*.

Whether an appellate waiver bars review of an issue is a question of law that is reviewed *de novo*. *United States v. Jacobs*, 635 F.3d 778, 780-81 (5th Cir. 2011). Dismissal is the appropriate remedy for enforcement of an appellate waiver. *United States v. Story*, 439 F.3d 226, 230-31 & n.5 (5th Cir. 2006).

### B. Mack's valid and enforceable appellate waiver bars the appeal of her sentence.

"This court applies general principles of contract law in interpreting the terms of a plea agreement." *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013) (citing *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008)). In analyzing an appellate waiver, the Court conducts a two-step inquiry: (1) whether the waiver was knowing and voluntary; and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the plea agreement. *United States v. Clark*, 148 F.4th 785, 790 (5th Cir. 2025) (citation omitted); *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005).

For an appellate waiver to be knowing and voluntary, the defendant must know that she had a right to appeal and that she was giving up that right. *United States v. McKinney*, 406 F.3d 744, 746 & n.2 (5th Cir. 2005) (citing *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994)). A waiver is both knowing and voluntary if the defendant indicates that she read and understood the agreement and the agreement contains an "explicit, unambiguous waiver of appeal." *Id.* at 746. It is sufficient for the district court to confirm that a defendant "reviewed the plea agreement with counsel, understood its terms, and signed it voluntarily." *United States v. Alvarado-Casas*, 715 F.3d 945, 955 (5th Cir. 2013). A defendant seeking to appeal in the face of an appellate waiver bears the burden of demonstrating that the waiver was uninformed and involuntary; absent such proof, the defendant's appellate challenge is unreviewable. *United States v. Cuevas-Andrade*, 232 F.3d 440, 446 (5th Cir. 2000). The record here establishes that Mack knowingly and voluntarily waived her right to appeal her sentence.

Mack signed the written plea agreement which contained the waiver of appeal and collateral attack. ROA.189, 191, 200. In doing so, she acknowledged that she was aware that she "had a right to appeal the

conviction and sentence imposed" as well as a "right to contest or 'collaterally attack' [her] conviction or sentence after the judgment of conviction and sentence ha[d] become final." ROA.191, 200. Mack also signed an addendum to that agreement, attesting that she "read and carefully reviewed every part of [her] plea agreement with [her] attorney" and she "underst[ood] th[e] agreement and [she] voluntarily agree[d] to its terms." ROA.202.

During the rearraignment hearing, Mack confirmed that she wanted to plead guilty and that she had reviewed the plea agreement with her lawyer, had all of her questions answered, and signed and understood the plea agreement containing an appellate waiver. ROA.410, 416, 418, 427-29, 433-34. Mack also confirmed that she was fully satisfied with defense counsel and that, if she was "unhappy with her sentence[,]" she could not "start over." ROA.418, 431-32.

Mack also understood the only exception to the appellate waiver was for ineffective assistance of counsel claims. ROA.427-28; *see* ROA.191. In summarizing the terms of the plea agreement on the record, the prosecutor reiterated that Mack's agreement contained an "appellate waiver, except as to her rights as to ineffective assistance of counsel."

ROA.427-28.

The plain language of the appellate waiver, moreover, clearly applies to and bars review of Mack's guidelines sentencing issues. *See Bond*, 414 F.3d at 544-45; *McKinney*, 406 F.3d at 746. Mack's plea agreement was unequivocal that she "knowingly and voluntarily waive[d] the right to appeal … the conviction and sentence, except that [she] d[id] not waive the right to raise a claim of ineffective assistance of counsel[.]" ROA.191. The plea agreement informed Mack that, if she filed a notice of appeal, the Government would "assert its rights under this agreement and seek specific performance of these waivers." ROA.191.

It is well-settled that a valid appellate waiver forecloses a challenge to the procedural reasonableness of a sentence. *See*, *e.g.*, *United States v. Armendariz*, 323 F. App'x 336, 337 (5th Cir. 2009) (unpublished) ("Armendariz's safety valve and mitigating role arguments do not fall within the exceptions to the waiver. Thus, Armendariz cannot raised these claims on appeal."); *United States v. Meredith*, 52 F.4th 984, 988 (5th Cir. 2022) (appellate waiver barred review of a challenge to guidelines application); *United States v. Wiggins*, 784 F. App'x 134, 135

(4th Cir. 2019) (unpublished) (appellate waiver barred review of court's refusal to apply a mitigating role adjustment under U.S.S.G. § 3B1.2).

Because Mack's appellate waiver was knowing and voluntary and applies to the matter at hand, this appeal should be dismissed or, in the alternative, denied.

## II. The district court properly denied Mack's request for a minimal participant adjustment under § 3B1.2.

### A. The standard of review is clear error.

Because Mack properly preserved her challenge below, this Court reviews the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual determinations for clear error. *United States v. Earnest*, 132 F.4th 905, 917 (5th Cir. 2025) (citing *United States v. Pena*, 91 F.4th 813, 817 (5th Cir. 2024)). Whether a defendant is minor or minimal participant under § 3B1.2 is a factual determination this Court reviews for clear error. *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005). The district court's factual findings include the adopted PSR's facts, inferences drawn from these facts, and the determination of what constitutes relevant conduct for sentencing. *See United States v. Hawkins*, 866 F.3d 344, 347 (5th Cir.

2017); *United States v. Williams*, 610 F.3d 271, 292 (5th Cir. 2010). Under clear error, this Court will uphold factual findings if they are plausible in light of the record as a whole. *See United States v. Ramos-Delgado*, 763 F.3d 398, 400 (5th Cir. 2014).

### B. Mack was an average participant in the drug conspiracy.

The Guidelines provide a mitigating role adjustment, the application of which is heavily fact-dependent based on the "totality of circumstances." U.S.S.G. § 3B1.2 & cmt. n.3(C). In assessing its application, the Sentencing Commission sets out a "non-exhaustive list of factors" the district court is instructed to consider: the degree to which the defendant (1) understood the scope and structure of the criminal activity; (2) participated in planning or organizing the criminal activity; (3) exercised or influenced decision-making authority; (4) stood to benefit from the criminal activity; and finally, (5) the nature and extent of defendant's participation in the criminal activity. *Id*. at (i)-(v).

Section 3B1.2 "provides a range of adjustments" for a defendant who plays a part in committing the offense that renders her "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2 & cmt. n.3(A). The "minimal participant"

designation Mack believed she was entitled to, is intended to cover defendants who "are plainly among the least culpable of those involved in the conduct of a group." *Id.* at n.4. In assessing applicability of this designation, the commentary instructs that a "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative as a role as a minimal participant." *Id.* The defendant bears the burden of showing a mitigating role adjustment is appropriate. *United States v. Lott*, 53 F.4th 319, 323 (5th Cir. 2022) (citing *United States v. Torres-Hernandez*, 843 F.3d 203, 207 (5th Cir. 2016)). A defendant's role in the criminal activity "may be deduced inferentially from available facts." *United States v. Guzman-Reyes*, 853 F.3d 260, 265 (5th Cir. 2017) (quoting *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995)).

Here, the district court properly denied Mack a minimal participant designation under § 3B1.2. Mack was very clearly not among the "least culpable" of Henry's drug trafficking operation.[4] Mack was entrusted to

---

[4] *See* ROA.273 (PSR ¶¶ 24-25) that details codefendant Trevonte Bell's role in the conspiracy that involved one completed drug deal on March 8, 2023; *see* ROA.274 (PSR ¶¶ 26-30) that details codefendant Javon Daniels' role in the conspiracy that involved one completed drug deal on March 11, 2023; *see* ROA.274-75 (PSR ¶¶ 31-36) that details codefendant Demarcus Williams' role in the conspiracy that involved one

coordinate the delivery of hundreds of kilograms of binding agent to her residence for subsequent delivery to the Airport Boulevard drug lab. ROA.272 (PSR ¶ 16). Using her personal email address, Mack placed more than 21 orders with LFA Machines for necessary equipment and supplies including multiple pill presses, binding agents, and pill stamps for set-up of a new lab after law enforcement's raid at the Airport Boulevard drug lab. ROA.272, 276-77 (PSR ¶¶ 18, 46-47). These facts are not characteristic of a mere low-level conspiracy member, but of a member integral to the lab's operations.

Mack was therefore held accountable for the entire drug quantity seized from the Airport Boulevard drug lab—an amount in excess of 41,000 kilograms of methamphetamine and 1,600 grams of fentanyl. ROA.277-78 (PSR ¶ 54). After Henry's drug lab was dismantled, Mack was entrusted to order the necessary items to reboot the operation at its new location. ROA.272, 277-78 (PSR ¶¶ 18, 54). As a result, Henry was

---

completed drug deal on March 14, 2023; *see* ROA.275-76 (PSR ¶¶ 37-42) that details codefendants Arthur Wafer and Darrell Gray's roles in the conspiracy that involved one completed drug deal on April 6, 2023; *see* ROA.276 (PSR ¶¶ 43-45) that details codefendant Randy Dixon's role in the conspiracy that involved several negotiated drug deals on March 8, 2023, and April 7-8, 2023; *see* ROA.277 (PSR ¶¶ 49-52) that details codefendant Broderick East's role in the conspiracy that involved several negotiated drug deals for the time period between April 20-28, 2023.

already negotiating deals for and delivering thousands of drug-laced pressed pills to customers on April 22, April 23, April 28, and May 2, 2023. ROA.272, 277 (PSR ¶¶ 18, 49-52). Undoubtedly, Henry's ability to mass produce drug-laced pressed pills just days after his Airport Boulevard lab was dismantled would have been stymied without Mack's role ordering the necessary equipment to successfully run the new drug lab. ROA.272, 277-78 (PSR ¶¶ 18, 54); ROA.291 (PSR Addendum).

As the probation officer correctly noted, without Mack's role at both the Airport Boulevard drug lab and the subsequent lab set-up, the mass production of drug-laced pills "would not have been possible." ROA.278 (PSR ¶ 54). These facts belie defense counsel's characterization that Mack was merely "a victim of trusting Henry" who was only "superficially aware" or only had "passive knowledge" rather than involvement as an "active participant" in Henry's drug-trafficking operation. ROA.235. While Mack was not the apex of the conspiracy, she performed an important middle-management role wherein she understood the scope and structure of the drug trafficking operation and actively participated in it. In sum, the district court properly deemed Mack an average participant in the conspiracy.

Because the district court properly deemed Mack an average participant, she was ineligible for reductions under §§ 2D1.1(a)(5) and 2D1.1(b)(17), which require a mitigating role reduction as a condition precedent to their application. *See* U.S.S.G. § 2D1.1(a)(5) ("the offense level specified in the Drug Quantity Table … except that if (A) the defendant receives and adjustment under § 3B1.2 (Mitigating Role)…"); U.S.S.G. § 2D1.1(b)(17) ("If the defendant receives the 4-level ("minimal participant") reduction in § 3B1.2(a) …").

Accordingly, the district court did not commit any error, much less clear error.

## CONCLUSION

Because the government seeks specific performance of Mack's knowing, voluntary and applicable appellate wavier, this Court should dismiss this appeal; in the alternative, it should affirm Mack's sentence.

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

*s/ Jennifer K. Teper*
Jennifer K. Teper
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9000
Fax: (713) 718-3302
Email: jennifer.teper@usdoj.gov

ATTORNEYS FOR APPELLEE

**CERTIFICATE OF SERVICE**

I, Assistant United States Attorney Jennifer K. Teper, hereby certify that on April 30, 2026, an electronic copy of the Appellee's Brief was served by notice of electronic filing via this court's CM/ECF system upon opposing counsel Romy Benjamin Kaplan, Attorney for Defendant/Appellant Erica Mack. Upon notification that the electronically filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be placed in the United States Mail, postage prepaid, addressed to the Clerk. *See* 5th Cir. R. 25.2.1, 31.1; 5th Cir. ECF filing standard E(1).

*s/ Jennifer K. Teper*
Jennifer K. Teper
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains approximately **3,825** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Century Schoolbook font, 14 point font for text and 12 point font for footnotes.

3. This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because this brief has been redacted of any personal data identifiers.

4. This brief complies with the electronic submission of 5th Cir. R. 25.2.1, because this is brief is an exact copy of the paper document.

5. This brief is free of viruses because this brief has been scanned for viruses with the most recent version of the McAfee Endpoint Security scanning program.

s/ *Jennifer K. Teper*
Jennifer K. Teper
Assistant United States Attorney

Date: April 30, 2026